

LODGED

1   MARTHA JO PETERS
2   General Delivery
3   27931 Radford Dr.           2013 JUL -5  AM II: 03
4   Sun City, CA. 92586
5   Tel. 951-287-7116           CLERK U.S. DISTRICT COURT
6   Email: RedViolet12@yahoo.com   CENTRAL DIST. OF CALIF.
7   No fax                      RIVERSIDE
8                               BY:_____
9
10              U.S. DISTRICT COURT
11              CENTRAL DISTRICT
12
13            STATE OF CALIFORNIA
14
15        COUNTY & CITY OF RIVERSIDE
16
17
18
19
20   MARTHA JO PETERS,
21          Plaintiff
22
23   v.
24
25   RUST CONSULTING INC. AND
26   WELLS FARGO BANK N.A.,
27          Defendants      ED CV 13 - 01194 JGB
28                                            (DTB
29
30
31                        CASE NO.
32
33
34
35                        VIOLATION OF MORTGAGE
36                        FORECLOSURE SETTLEMENT
37                        AGREEMENT  (FAILURE TO
38                        RENDER TO PLAINTIFF THE
39                        APPROPRIATE COMPENSATION
40                        IN ACCORD WITH THE
41                        AGREEMENT)
42
43
44
45
46

                                             1

## I. **INTRODUCTION**

The Plaintiff filed an action against Wells Fargo Bank in 2010, after discovering that Wells Fargo had not only claimed to assume a predatory loan arranged for the Plaintiff by Indy Mac Bank, then passed to Wachovia Bank. Wells Fargo represented itself to her bankruptcy trustee as a creditor of the Plaintiff when in fact it was not. Wells Fargo then petitioned for relief from the stay of the Plaintiff's bankruptcy, and proceeded to foreclose upon the Plaintiff's home. During the default period, when Wachovia was the holder of the loan, the Plaintiff called Wachovia on a number of occasions, seeking and requesting a loan modification. The Plaintiff proposed to Wachovia that she be allowed to pay an additional stipend each month above the monthly payment under the loan arrangements, and then to pay a lump sum for the remainder in default at the end of one year. Wachovia refused and sent her a letter demanding the entire amount due in default at once, which the Plaintiff could not do. The Plaintiff then filed bankruptcy, listing all her property as she thought she was required to do. The Plaintiff had never filed any bankruptcy before and had no intention of relinquishing her home to the bankruptcy, which was a Chapter 7. Despite this, she later found that there was a notation on the bankruptcy papers which appeared to indicate an abandonment of her only home. She was a widow, and had lost all her retirement funds in the stock market . She is now living on an income compromised of both social security and a veterans pension. Her home was foreclosed in a process during her bankruptcy as she fled to Arizona where she had found employment. Her expectations were that she would use the earnings from that job to pay the defaulted payments. The job did not last and she returned to California where the foreclosure went forward. She had no idea that it was Wells Fargo that was foreclosing on her home, until after it was done and she found that in the records of the property it was Wells Fargo who did the foreclosing though that bank did not hold the loan.

The Plaintiff received notice from the Independent Foreclosure Review agency that had identified her as a person whose home had been improperly foreclosed. She completed the review application documents and sent them in as one of the early applicants. Over a year passed while the application waited for some resolution of her wrongful foreclosure. Then the plan for compensation changed to one in which all the homeowners would

1    received compensation based upon the status and circumstances of their foreclosure.
2    There was ultimately a chart drafted and agreed upon in which those whose home
3    foreclosure was initiated and/or completed during a bankruptcy. The Plaintiff is in that
4    group, which were indicated as to receive a compensation amount of $62,500 if they filed
5    the independent foreclosure review application and approximately $31,000 if they had
6    not filed the application. There was no other notation of any other stipulation on this
7    compensation. Thusin  accord with this compensation chart, the Plaintiff was to receive
8    the $62,500 amount.  In addition, the chart showed that any homeowner who had been
9    denied a loan modification was to be sent the amount of $6000. The Plaintiff did not
10   receive any of these amounts. She was hoping, once she discovered the compensation
11   chart, to receive the largest amount and then be able to use the funds to replace the home
12   she lost. She has lived in her vehicle in the rain and cold, and is now living with friends,
13   to whom she has been unable to pay rent. At the age of 67, having received the predatory
14   loan when she was past 60, she will face her advancing old age in a homeless state if the
15   correct compensation is not given to her in accord with the agreed on chart. Instead ofthe
16   amounts shown, she was sent only a check for $600, which is not enough to cover even
17   one month's rent at current California rental rates.
18
19   **II. THE   MORTGAGE   FORECLOSURE   SETTLEMENT   AGREEMENT,**
20         **WITH  CHART  OF  AMOUNTS  OF  COMPENSATION  TO  BE  PAID**
21         **TO AFFECTED HOMEOWNERS, INCLUDING THE PLAINTIFF IN**
22         **THIS CASE**
23
24   On the following page is the chart, printed from the web site where the government and
25   bank agreed upon compensation chart was posted. Circled is the amount that the Plaintiff
26   should have received as a homeowner whose home foreclosure was both initiated and
27   completed during her bankruptcy. That amount shown is $62,500. Whatever claims that
28   Wells Fargo makes in an effort to claim a right to foreclose due to some perceived action
29   opening the path to that action on their part is false. At no time did Wells Fargo hold any
30   right nor interest in her home or the loan at the time she filed the bankruptcy nor even
31   during the progression of the bankruptcy. As is shown in the documents submitted to the

1   court, not only did Wells Fargo hold no interest by right in her home, but immediately
2   after the foreclosure, it purchased the home from Wachovia. How could the party
3   claiming a right to initiate foreclosure as the creditor of the Plaintiff then actually
4   foreclose it and then purchase it from the Wachovia Bank, which was the only lender the
5   Plaintiff knew of who had held the loan on her property, according to Wachovia's claim
6   to have assumed it from IndyMac, World Bank? This purchase belies Wells Fargo's
7   earlier claim to have any right to foreclose, as noted on the bankruptcy docket.
8
9   ## III. <u>PLAINTIFF'S WRONGFUL FORECLOSURE AS IDENTIFIED FOR</u>
10      <u>COMPENSATION BY STATE AND FEDERAL GOVERNMENTS</u>
11
12   Under the agreement made between the state and federal government governments and
13   the banks, this chart was established as the standard for compensation for the various
14   categories of foreclosed homeowners. Given the fact that the Plaintiff's home was
15   subjected to both the initiation of and the completion of foreclosure during the protection
16   of her bankruptcy, the Plaintiff is entitled to the amount of $62,500 with the apparent
17   additional $6000 compensation for having been denied any loan modification despite her
18   requests by phone calls to Wachovia.
19
20   ## IV. <u>PLAINTIFF'S FORECLOSURE WAS COMPLETED DURING</u>
21       <u>PROTECTION OF FEDERAL BANKRUPTCY</u>
22
23   As is evident from the documents submitted during the complaint filed by the Plaintiff in
24   Superior Court of Riverside, the foreclosure of her home was completed during the
25   protection of Chapter 7 bankruptcy. She has been without her home since the foreclosure
26   was completed in 2009.
27
28
29
30

## V. **PLAINTIFF WAS SENT AN INAPPROPRIATE COMPENSATION AMOUNT OF $600, INSTEAD OF THE DESIGNATED $62,500 STATED ON THE SETTLEMENT AGREEMENT CHART**

The Plaintiff received nothing but a check for $600 from the Rust Consulting Agency, the company assigned with sending compensations to the wrongfully foreclosed homeowners.

## VI. **DAMAGES**

Plaintiff seeks as damages the amount of $62,500 as designated by the agreement for a completed foreclosure while in bankruptcy protection. She also asks for the $6000 compensation designated to remedy the refusal of any loan modification. Plaintiff further seeks punitive damages up to triple the amount of the designated payment based upon a bad faith breach and / or fraud, and attorney fees of $20,000 as well.

Attachment: the compensation chart agreed upon under the Independent Foreclosure Review

Affirmed under penalty of perjury,

_Martha Jo Peters_                    7/5/2013

MARTHA JO PETERS                        Date

1
2
3
4
5
6
7        SERVICE OF SUMMONS TO THESE NAMED DEFENDANTS:
8
9
10
11            Rust Consulting, Inc.
12            625 Marquette Avenue, Suite 880
13            Minneapolis, MN 55402
14            T: 612.359.2000
15            F: 612.359.2050
16            info@rustconsulting.com
17            www.rustconsulting.com
18
19
20            Wells Fargo Bank, N.A.
21            c/o Lynette Winston
22            AFRCT
23            199 South Los Robles Ave,  Ste 600
24            Pasadena, CA. 91101

             Office of the Comptroller of the Currency
             400 7th Street SW, Suite 3E-218
             Washington, D.C. 20219

*for notification only, not a defendant*

attachments

The table below provides number of eligible borrowers and payment amounts in each category for borrowers covered by the Independent Foreclosure Review Payment Agreement. The agreement was announced in January 2013 between federal banking regulators -- the Office of the Comptroller of the Currency and the Board of Governors of the Federal Reserve System -- and 11 mortgage servicers. More information about these agreements is available from the regulators' Web sites -- www.occ.gov and www.federalreserve.gov. The table contains only standard payout amounts; it does not include amounts for lost equity, which borrowers in the first and third categories may receive in addition to the standard payout amounts, or the payments calculated on a case-by-case basis in the second category. This table excludes borrowers whose mortgages were serviced by Goldman Sachs and Morgan Stanley.

| Category | Foreclosure Stage | Number of Borrowers Payment Delivered With Borrower Review | | Number for Borrower Payment All Other Borrowers | | Total Borrowers |
|---|---|---|---|---|---|---|
| Servicer foreclosed on borrower eligible for Servicemembers Civil Relief Act (SCRA) protection (applies only to rescinded or completed foreclosures)* | Rescinded | 8 | $15,000 | 108 | $15,000 | 116 |
| | Completed | 123 | $125,000 | 959 | $125,000 | 1,082 |
| Servicer charged servicemembers interest rates that exceed SCRA Section 527 limits** | In process | 33 | >=$300 | 317 | >=$300 | 350 |
| | Completed | 11 | >=$300 | 63 | >=$300 | 74 |
| Servicer initiated or completed foreclosure on borrower who was not in default* | In process | 46 | $5,000 | 543 | $5,000 | 589 |
| | Rescinded | 8 | $15,000 | 29 | $15,000 | 37 |
| | Completed | 8 | $125,000 | 45 | $125,000 | 53 |
| Servicer initiated or completed foreclosure on borrower who was protected by federal bankruptcy law | In process | 2,401 | $7,500 | 19,860 | $3,750 | 22,261 |
| | Rescinded | 28 | $7,500 | 160 | $3,750 | 188 |
| | Completed | 763 | $62,500 | 5,075 | $31,250 | 5,838 |
| Servicer completed foreclosure on borrower who was meeting all requirements of documented forbearance plan (applies only to rescinded or completed foreclosures) | Rescinded | 50 | $6,000 | 185 | $3,000 | 235 |
| | Completed | 162 | $24,000 | 684 | $12,000 | 846 |
| Servicer failed to convert borrower to permanent modification after three successful payments under a written trial-period plan | In process | 461 | $6,000 | 2,436 | $3,000 | 2,897 |
| | Rescinded | 31 | $6,000 | 91 | $3,000 | 122 |
| | Completed | 239 | $50,000 | 718 | $25,000 | 957 |
| Servicer completed foreclosure on borrower who was performing all requirements of the written trial-period plan | Rescinded | 29 | $6,000 | 126 | $3,000 | 155 |
| | Completed | 163 | $50,000 | 477 | $25,000 | 640 |
| Modification request approved | In process | 118,177 | $500 | 746,894 | $300 | 865,071 |
| | Rescinded | 2,617 | $500 | 9,229 | $300 | 11,846 |
| | Completed | 39,368 | $500 | 195,448 | $300 | 234,816 |
| Modification request denied | In process | 62,557 | $2,000 | 432,595 | $1,000 | 495,152 |
| | Rescinded | 1,539 | $2,000 | 6,007 | $1,000 | 7,546 |
| | Completed | 60,251 | $6,000 | 309,597 | $3,000 | 369,848 |
| Modification request received but no underwriting decision made | In process | 21,153 | $800 | 200,596 | $400 | 221,749 |
| | Rescinded | 709 | $800 | 3,757 | $400 | 4,466 |
| | Completed | 27,152 | $800 | 168,479 | $400 | 195,631 |
| Servicer did not engage with borrower in a loan modification or other loss mitigation action | In process | 16,679 | $600 | 312,881 | $300 | 329,560 |
| | Rescinded | 350 | $600 | 4,549 | $300 | 4,899 |
| | Completed | 36,564 | $600 | 531,912 | $300 | 568,476 |
| All other loans | In process | 21,459 | $500 | 334,630 | $300 | 356,089 |
| | Rescinded | 450 | $500 | 4,161 | $300 | 4,611 |
| | Completed | 24,959 | $500 | 218,737 | $300 | 243,696 |
| Totals | | 438,548 | 3,511,348 | | 3,949,896 | |

*Total amount received by borrower in the first and third categories listed here may differ from amount shown because of offsets resulting from other legal settlements. **Servicemembers who were charged interest rates higher than limits allowed by the SCRA Section 527 will receive payments of $300 or the amount overcharged and paid by the borrower, whichever is greater.

## SPECIAL INTERROGATORIES

1. Who / Which defendant made the decision to pay the Plaintiff only $600 compensation under the Independent Foreclosure Review chart as agreed upon with the state and federal governments?

2. Under the terms of the settlement agreement mentioned supra, what factors were relied upon in the decision to pay the Plaintiff $600?

3. Since the Plaintiff was both denied any loan modification in phone requests she made, and since her home was foreclosed during the bankruptcy she filed, what is the reason she was not given the compensation amounts noted for homeowners who had been denied modification and foreclosed upon in bankruptcy, as well as having filed the IFR (independent foreclosure review)?

4. Did the Plaintiff's lawsuit and current appeal play any part in the denial of the larger amounts of $62,500 and $6000 which she appears qualified to receive based on the chart and instead compensated with only $600, which is not even enough for one month's rent?

5. Please detail the 'other factors' alluded to in the compensation chart. What are these 'other factors'? Are they subjective factors based upon whether the bank or the Rust agency perceive the homeowner as 'likeable' or 'deserving' or whether or not the homeowner filed a legal action or not? That is, was there any punitive aspect to the decision to pay the smallest compensation possible to any particular homeowner or to the Plaintiff in particular?

6. How many homeowners received the amount of $62,500? Did any of these other homeowners file a lawsuit ? Did any of these other homeowners prevail in their lawsuits against the bank / lender?

7. How many of the homeowners who may have sued the bank/lender defendant had their claims dismissed with prejudice?

8. Is Wells Fargo the trustee of funds for the Riverside County Redevelopment Project currently approved to? Does this relationship with the County compromise the courts in the county where the Plaintiff has filed complaints against Wells Fargo?

9. Does the Office of the Comptroller of the Currency monitor or control the compensations paid to homeowners by the Rust agency?

10. Have any explanations been provided to the Comptroller regarding the factors used to determine what compensation homeowners were to receive, other than loan modification and foreclosure factors?

11. Are you aware that hundreds if not thousands of homeowners have expressed anger over the payments they view as both inadequate and not in compliance with the settlement compensation chart published online?

```
 1
 2
 3
 4
 5
 6
 7          SERVICE OF SUMMONS TO THESE NAMED DEFENDANTS:
 8
 9
10
11              Rust Consulting, Inc.
12              625 Marquette Avenue, Suite 880
13               Minneapolis, MN 55402
14              T: 612.359.2000
15              F: 612.359.2050
16              info@rustconsulting.com
17              www.rustconsulting.com
18
19
20              Wells Fargo Bank, N.A.
21              c/o Lynette Winston
22              AFRCT
23              199 South Los Robles Ave,  Ste 600
24              Pasadena, CA. 91101


                Office of the Comptroller of the Currency
                400 7th Street SW, Suite 3E-218
                Washington, D.C. 20219
```

*for notification only – not a defendant*

Foreclosure Settlement Checks Significantly Smaller Than Regulators Forecasted: Homeowners

Posted: 05/01/2013 12:45 pm EDT | Updated: 05/01/2013 6:39 pm EDT

follow:

Foreclosure Settlement, Independent Foreclosure Review, Complaints From Homeowners About Illegal Forclosures Deutsche, Foreclosure Review Settlement, Foreclosure Review Settlement Payments, Foreclosure Review Settlement Update, Foreclosure Settlement Checks, Independent Foreclosure Review Settlement, Wells Fargo Settlement Foreclosure,  Business News

Adam Crain reckoned he was due $125,000. That amount would come as compensation for losing his Oak Harbor, Wash., home to foreclosure while he was serving aboard a naval vessel in the Middle East. He calculated that sum using a table distributed by federal regulators as part of a $9.2 billion settlement with mortgage companies over a wave of improper foreclosures.

Federal law offers special protections from foreclosure to military personnel, especially those receiving hazard pay, as Crain was at the time.

But last week, when Crain opened the envelope and removed his check, he was horrified by the amount his bank, Wells Fargo, had determined he was due: Eight hundred dollars was all he received.

"This is what happens when there is no oversight," Crain said.

Two weeks after the first payments began going out as part of the settlement struck in January with mortgage companies, homeowners who suffered improper foreclosures are describing a new injury. Many say they are being denied their rightful compensation under the terms of the deal.

More than a dozen people who have contacted The Huffington Post in recent days say that the check they received is smaller than what they deserve, based on their interpretation of the payment table. Some feel they were shorted by a few hundred dollars; others, like Crain, say they were paid a tiny fraction of what they feel they are owed.

Crain claims that his status as active duty military personnel, receiving "imminent danger" pay, meant that the bank had to get a court order before completing his foreclosure.

Wells Fargo says that its records indicate Crain should not qualify for that protection.

"Our own review outside of the IFR process shows that Mr. Crain's foreclosure was handled appropriately," said Tom Gorda, a spokesman for Wells Fargo.

Gorda added that regulators created the foreclosure review compensation categories, and the fact that a borrower received a payment does not necessarily reflect whether or not that person was harmed by improper foreclosure practices.

To some degree, the checks represent a math problem. In crafting the deal, regulators at the Office of the Comptroller of the Currency and the Federal Reserve determined that all 4.4. million people who received a foreclosure notice in 2009 or 2010 would receive a payout, regardless of whether they suffered any harm. If the $3.6 billion allocated to these homeowners was evenly allocated, everyone would receive a check for a bit more than $800.

Yet regulators also wanted to deal out more money for people who suffered the most obvious harm. Eventually, they created 11 categories. A "completed foreclosure" of a borrower protected by bankruptcy law, for example, would yield at minimum a $31,250 payout. Others would receive just $300.

Borrowers who previously applied to the foreclosure review would typically see their payout double, according to the chart.

Given the well-documented complaints that homeowners have made for years about how their bank or mortgage "servicer" managed their loan account, it's probably not surprising that many would find their payout amount unsatisfying. When the payout plans were announced last year, many felt the expected recompense figures were paltry compared to the injustice they had suffered.

Now, many borrowers are saying that they've gotten less than what they should have received -- based not simply on their own sense of injustice, but on their understanding of the payment chart. They said they were especially frustrated that their check came with no explanation of how their payout was calculated.

"I keep wondering, 'How do they know all the facts of what happened to me and all the others?'" said John Noble, who said he abruptly lost his Flagstaff, Ariz., home to foreclosure after paying $19,000 to catch up on his payments. He received $500.

Homeowner advocates say the payment system is unclear and doesn't make sense based on what is known about the banks' flawed file-keeping.

"It is less than it cost me to move out of the house that they foreclosed on illegally," he said.

JPMorgan Chase, which made the payment decision, did not respond to a request for comment.

On Facebook, a group of about 500 borrowers is calling on authorities to revive the review program so that they might receive a full accounting of what went wrong. "We requested a review of bank misconduct and illegal foreclosure practices. Not a small payout!" they wrote in a petition intended for lawmakers and regulators.

It is highly unlikely that the reviews will be revived, though some politicians, including Massachusetts Sen. Elizabeth Warren (D), are pressuring regulators to reveal to homeowners the results of the earlier, incomplete reviews.

Goldberg said regulators would have been better off just dividing the pot up equally among all 4.4 million borrowers. "They relied on servicers' files they knew were highly flawed," she said.

She added: "I've been working on banking issues a long time, and I've never seen a regulatory process so riddled with problems."

This story has been updated with a comment from Wells Fargo.

Because it is regarded as a drastic remedy, courts grant dismissals with prejudice only in the most egregious cases in response to a motion brought by a defendant or by a court sua sponte or on its own will.

# Maryland Attorney General Doug Gansler Announces Wells Fargo Mortage Settlement

01/ 5/12 01:23 PM ET   Associated Press**AP**

http://www.huffingtonpost.com/2012/01/05/maryland-wells-fargo-mortgage_n_1186699.html

BALTIMORE -- Maryland Attorney General Doug Gansler has announced an agreement with Wells Fargo relating to allegedly deceptive marketing of adjustable rate mortgages written by companies it acquired in 2008.

Gansler said Thursday that the settlement involves mortgages written by Wachovia and Golden West Financial.

Gansler says the settlement will create loan modifications for some customers. He also says Wells Fargo has agreed to pay about $940,000 for restitution to "Pick-a-Payment" borrowers who lost their homes in foreclosure.

The attorney general's Consumer Protection Division says Wachovia and Golden West did not fully explain to borrowers who chose a loan with payments that were less than the interest actually due that their minimum payments would not cover the full interest and that their principal debt would actually increase over time

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

     This case has been assigned to District Judge _____Jesus G. Bernal_____ and the assigned discovery Magistrate Judge is _____David T. Bristow_____.

     The case number on all documents filed with the Court should read as follows:

## _____ EDCV13-01194 JGB (DTBx) _____

     Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

     All discovery related motions should be noticed on the calendar of the Magistrate Judge.

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☐ Southern Division | ☑ Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (01/09)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☑ )

*MARTHA JO PETERS*

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

*GENERAL DELIVERY
27931. RADFORD DR.
SUN CITY CA. 92586
951-287-7116*

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☑ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☒5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ *62,500 + DAMAGE TOTAL OF 250,*

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

*BREACH / VIOLATION OF FED / STATE SETTLEMENT AGREEMEN*

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: *ED CV 13 - 01194 JGB (DTBx)*

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)   CIVIL COVER SHEET   Page 1 of 2

JUL -9 2013

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| RIVERSIDE | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | MINNEAPOLIS, MINNESOTA |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
NOTE: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | PASADENA CALIF (ATTY) PASADENA, CALIFORNIA OUT OF STATE INCORPORATION |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Martha Jolle_   DATE: 7/5/2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

CV-71 (02/13)                    CIVIL COVER SHEET                    Page 2 of 2